UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DE JESUS TOLEDO SAAVEDRA (A-098-475-761 and A-098-802-460),<br><br>Petitioner,<br><br>v.<br><br>DUSTIN STUBBS, et al.,<br><br>Respondents. | No. 1:26-cv-6601 TLN CSK<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Maria De Jesus Toledo Saavedra (A-098-475-761 and A-098-802-460),[1] a native and citizen of Mexico who is proceeding through counsel, filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[2] On October 31, 2024, petitioner was granted public interest parole based on her son's military service in the U.S. Marine Corps. On August 6, 2026, petitioner reported with her veteran son to a scheduled interview for petitioner's immigration application to adjust her status at the U.S. Citizenship and Immigration Services ("USCIS") field office. Petitioner's veteran son was not permitted to attend her interview and instead, petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE"). This

[1] Petitioner has been assigned two alien registration numbers, and both are listed here in an abundance of caution.

[2] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

habeas action concerns petitioner's detention. For the reasons that follow, the Court recommends granting the petition for a writ of habeas corpus and ordering petitioner's immediate release.

## I. FACTUAL BACKGROUND[3]

Petitioner is from Mexico, and is the mother of Brian Lemus, who is over 21 years old, and was honorably discharged from the U.S. Marine Corps. (ECF No. 1 at 8-9.) It is unclear when petitioner first entered the United States. (Id., passim.) Petitioner married a lawful permanent resident in November 2005. (Id. at 2.) On January 9, 2018, petitioner was granted work authorization from January 9, 2018, to July 28, 2018. (ECF No. 1-1 at 28.)

On February 24, 2022, petitioner's I-130 Immediate Relative Application was filed, and it was approved on July 25, 2023. (ECF No. 1 at 11.) On October 31, 2024, petitioner received a public interest parole through October 30, 2025, based on her son's military service. (Id.; ECF No. 1-1 at 30.) On April 8, 2026, petitioner attended the biometrics appointment at USCIS for both her I-485 adjustment of status and I-765 employment authorization applications, which are pending. (ECF No. 1 at 11.) These applications and petitioner's parole were filed under A 098-475-761. (Id. at 8.) On August 6, 2026, petitioner and her veteran son appeared at the USCIS office for petitioner's adjustment of status interview. Her son was not permitted to attend or serve as an interpreter during the interview, but he was able to hire an interpreter who had just finished translating for another interview. (Id. at 9.) After the hour long interview, the USCIS officer informed petitioner's son that petitioner had been detained by ICE. (Id. at 10.) Petitioner's son was provided a "Notice of Interview Results," which stated that USCIS was not able to complete petitioner's case, and advised waiting no less than 120 days before making a status inquiry. (Id.; ECF No. 1-1 at 7.) No reason for petitioner's detention was given; petitioner has not received a notice to appear or other document explaining her detention. (ECF No. 1 at 10.) Petitioner does not have a removal order or pending proceedings before the immigration court. (Id. at 8.)

---

[3] Petitioner filed a verified habeas petition. (ECF No. 1 at 20.) A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).

Petitioner was not provided a pre-deprivation hearing or pre-deprivation notice of the basis for her detention. (Id. at 8-10.) Petitioner has been in continuous detention since August 6, 2026. (Id. at 11.) Petitioner has no criminal history. (Id. at 2.) Respondents did not respond to the petition, and the Court therefore finds that respondents do not contest petitioner's factual allegations.

## II. PROCEDURAL BACKGROUND

On August 18, 2026, petitioner filed her petition for writ of habeas corpus. (ECF No. 1.) Despite filing a designation of counsel for service on August 18, 2026, being warned that the failure to respond to the petition would be interpreted as non-opposition to granting the relief requested in the habeas petition (ECF No. 5 at 2), and being granted an extension of time to respond, respondents did not file an answer or motion to dismiss the petition. (See Docket.) Therefore, the Court finds that respondent does not oppose granting relief. Briefing is now complete.

## III. LEGAL STANDARDS

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV. DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690 (holding that

8 U.S.C. § 1231(a)(6) does not authorize indefinite detention). Petitioner challenges her detention based on the violation of the Immigration and Nationality Act ("INA") and the Fifth Amendment procedural due process clause. (ECF No. 1 at 17-18.) As described above, the Court finds that respondents do not oppose granting relief where respondents have not opposed or responded to the petition despite being provided with the opportunity to do so and warned that the failure to respond to the petition would be interpreted as non-opposition to granting the relief requested.

Petitioner acquired a protected liberty interest in her continued freedom when immigration officials released her on public interest parole in October 2024.[4] See Soler v. Warden, Mesa Verde Detention Facility, No. 1:26-cv-5417 DAD SCR, 2026 WL 2138152, at *1 (E.D. Cal. July 24, 2026 E.D. Cal.); Chavarria v. Chestnut, No. 1:25-cv-1755 DAD AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025). Although petitioner's parole expired in October 2025, the "liberty interest [does] not expire along with [her] parole." D.L.C. v. Wofford, 820 F. Supp. 3d 1106, 1111 (E.D. Cal. 2026) (citing cases). "The court therefore need not determine whether § 1225 or § 1226 applies in this case because petitioner has a liberty interest in her continued release regardless of the applicable detention scheme." Cajina v. Wofford, No. 1:25-cv-1566 DAD AC, 2025 WL 3251083, at *3 (E.D. Cal. Nov. 21, 2025) (citations omitted).

There has been no attempt to establish that the government satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]" Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is

---

[4] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 amended the parole statute at 8 U.S.C. § 1182(d)(5). It replaced the "emergent reasons or for reasons deemed strictly in the public interest" standard with today's "urgent humanitarian reasons" and "significant public benefit" criteria. See Walters v. Reno, 145 F.3d 1032, 1051 (9th Cir. 1998) (noting amendment).

lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee."

Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner's parole into the United States on October 31, 2024, is similar because it allowed petitioner to live in the United States, subject to immigration supervision, but free of custody for almost two years. Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482. Petitioner has diligently sought adjustment of her immigration status and sought work authorizations. In addition to caring for family members, petitioner has helped several community members through cancer treatment, the loss of a loved one, and taken in a military member who was unable to travel home during a long weekend. (ECF No. 1 at 2-3; ECF No. 1-1 at 52-61.) This Court finds that petitioner's original parole and time out of custody gave rise to a constitutionally protected liberty interest.

In light of all of the foregoing, the Court finds that petitioner's prior parole created a reasonable expectation that she would be entitled to retain her liberty. As noted above, petitioner's liberty interest in parole did not expire when her public interest parole expired in October 2025. See D.L.C., 820 F. Supp. 3d at 1111 (citing cases).

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has applied the three factor balancing test used in Mathews v. Eldridge, 424 U.S. 319 (1976), when determining the adequacy of process in the context of civil immigration detention. See Rodriguez Diaz v. Garland, 53 F.4th at 1206; see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention. "Freedom from

imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For almost two years, petitioner enjoyed her parole, free from custody, before she was detained on August 6, 2026. Petitioner also sought another work authorization. The duration of her public interest parole elevates and underscores her interest in liberty. See Pinchi v. Noem, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. July 24, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty.").

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondents failed to file a responsive pleading and therefore do not contend that petitioner is or was a flight risk or a danger to the community. (See Docket.) In addition, it is undisputed hat petitioner has no criminal record. (ECF No. 1 at 2.) Here, petitioner has been detained since August 2026, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. No neutral arbiter has determined whether petitioner is a flight risk or a danger to the community.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 19, 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the government's interest is even lower because petitioner was granted public interest parole based on

her son's military service, petitioner has lived in the country without incident for almost two years after being granted parole, and she has no criminal record. See Pinchi, 792 F. Supp. 3d at 1036.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before she was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). The record contains no reason why a pre-deprivation hearing could not be held, and offered no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is entitled to relief on her due process claim and should be immediately released.

## V. CONCLUSION

In summary, the Court recommends that the petition for writ of habeas corpus be granted on due process grounds, and petitioner be immediately released.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.
2. Respondents be ordered to IMMEDIATELY release petitioner Maria De Jesus Toledo Saavedra (A-098-475-761 and A-098-802-460) and be ordered to provide petitioner with a copy of the release order at or near the time of release. If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release.

3. Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that her physical custody is legally justified. Petitioner shall be allowed to have her counsel and her interpreter present at any such hearing. This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).
4. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 3, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/tole6601.157.2241.imm.RELEASE